UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Christopher S. Johnson, | ) | C/A No.  5:12-cv-03447-SB-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Report and Recommendation |
| | ) | |
| Patricia Ray, in her individual capacity; | ) | |
| John Doe, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights. This matter is before the court on the Motion for Summary Judgment filed by Defendant Patricia Ray on May 29, 2013. ECF No. 45.  As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[1] on May 30, 2013, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 46. Plaintiff responded to Defendant's motion on July 8, 2013, Defendant replied on July 18, 2013, and Plaintiff filed a sur-reply on July 30, 2013, making this motion ripe for consideration.  ECF Nos. 52, 57, 59. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because Defendant's summary judgment motion is dispositive, a Report and Recommendation is entered for the court's review.

---

[1] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

I.      Background

Plaintiff brought this action under 42 U.S.C. § 1983 seeking damages and declaratory relief for alleged violations that occurred while he was a pre-trial detainee at the Greenville County Detention Center ("GCDC").  ECF No. 1 at 2. Plaintiff filed his Complaint on December 6, 2012, and contends that on or about December 12, 2010,[2] that he was having "blood drawn as part of a screening process for possible diabetes."  ECF No. 1 at 4.  Plaintiff contends that while he was seated to have his blood drawn that "a metallic 'swingarm'" was positioned across his lap and "immediately upon the placement of the 'swingarm' [Plaintiff] felt a sharp, stinging pain [in] his right leg."  *Id.*  Plaintiff alleges that he then moved the swingarm and observed a "very thin and needle-like metal splinter . . . protruding from the 'swingarm'."  *Id.*  Plaintiff avers that he removed the metal splinter from the swingarm and showed it to the technician who was drawing his blood.  *Id.*  Plaintiff contends that the technician looked at the metal splinter and threw it into a medical waste container, and proceeded to draw Plaintiff's blood.  *Id.* at 5. Plaintiff alleges that he requested to see Defendant Rae[3] explaining "his concern over the possibility of a tetanus infection" and was subsequently told that "his concern was minor, even irrational" and his request for rubbing alcohol or iodine was denied.  *Id.*  Plaintiff was instead given "a couple of small bandages along with instructions to clean the affected area with soap and hot water, which [he] did, vigorously, upon returning to his assigned housing unit."  *Id.*  Over the next couple of days, Plaintiff "reported extreme changes, not only in the sensitivity, but in the affected area's physical appearance, which had gone from something 'pimple-like' and affecting an area appx. the size of a baseball, to a dime sized pustule, which affected an area ranging from the Plaintiff's

---

[2] Complaint states December 12 but actual date is December 20 according to Plaintiff's medical records.  In his response to Defendant's motion for summary judgment, Plaintiff notes date as December 20, 2010.  *See* ECF No. 52 at 3.
[3] Incorrectly identified in the case caption as Patricia Ray.

scrotum to his right knee and which rendered Plaintiff unable to walk." *Id.* at 5-6.  At this time Plaintiff was the taken to the medical department and examined by Defendant Rae where Plaintiff contends that he complained about the "length of time it had taken him" to be seen despite making "multiple attempts, with multiple staff members, over multiple shifts." *Id.* at 6. Plaintiff alleges that Defendant Rae "attributed this 'delay' to a policy of balancing the facility's system of triage with its budgetary concerns/policies." *Id.*   Defendant Rae ordered an x-ray of Plaintiff's upper right leg which was inconclusive; she then made an incision in Plaintiff's upper right leg and removed a "small fragment of metal from within Plaintiff's leg." *Id.* at 6-7. Plaintiff was given a tetanus shot and a sample of tissue was taken from the incision and sent to a lab for testing.  *Id.* at 7.  Plaintiff was informed a few days later that he had contracted "methicillin-resistant staphylococcus aureus, or 'MRSA'." *Id.*   Plaintiff had two outbreaks of MRSA while housed in GCDC, the first lasting from mid-December 2010 to mid-January 2011, and the second lasting from mid-January to mid-February 2011. *Id.* Plaintiff contends that both MRSA outbreaks left him with noticeable physical scars.  *Id.* at 7-8.   Plaintiff requests compensatory damages in the amount of $250,000; punitive damages in the amount of $400,000; damages for pain and suffering in the amount of $60,000, a jury trial; costs; and declaratory relief. *Id.* at 16.

II.    Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III.    Analysis

Defendant Patricia Rae moves for summary judgment arguing that Plaintiff cannot show that she was "deliberately indifferent to a serious medical need" because the evidence in the record establishes that Defendant Rae provided Plaintiff with "exceptional medical care," and that Plaintiff received appropriate medical treatment.  ECF No. 45-1.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."[4] *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Farmer v. Brennan*, 511 U.S. 825, at 835 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

Deliberate indifference to a serious medical need requires proof that each Defendant knew of and disregarded the risk posed by the Plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 837. In cases involving the denial of or the delay in providing medical treatment to a prisoner, the prison official must know of and disregard an objectively serious condition, medical need, or risk of harm. *Sosebee v. Murphy*, 797 F.2d 179, 182-83 (4th Cir. 1986). The Fourth Circuit defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008). A medical condition is also serious if a delay in treatment causes a lifelong handicap or

---

[4] The undersigned notes that Plaintiff was a pre-trial detainee at the time of the alleged constitutional violations. Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need). *See Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988) (citing *Estelle*, 429 U.S. 97).

permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Defendant Rae offers Plaintiff's medical records and her own affidavit in support of her summary judgment motion. *See* ECF Nos. 45-2, 45-4. Defendant Rae attests that she saw Plaintiff on December 20, 2010 concerning "a possible case of prostatitis" and while Rae talked to Plaintiff he mentioned that he had diabetes and had stopped "taking his medicine prior to his incarceration at GCDC." Rae Aff. ¶ 4, ECF No. 45-2. Rae states that she "ordered a blood test to evaluate [Plaintiff's] need for diabetes-related treatment [and another] medical clinic employee drew the blood for the test." *Id.* Rae avers that she next saw Plaintiff on December 23, 2010 "to evaluate a sore on his right thigh" and when she cut into the sore she found "a tiny metal fragment which she removed" and then she had an x-ray taken of Plaintiff's leg which did not reveal any additional metal fragments. *Id.* at ¶ 5. Rae attests that she was suspicious that the sore was an active MRSA infection so she collected fluid from the wound and sent the fluid to a lab to be tested. *Id.* Rae contends that she prescribed Bactrim and had Plaintiff "removed from general population and re-housed in a medical isolation dorm" to ensure Plaintiff was compliant with the antibiotic treatment and so that the medical personnel "could focus on [Plaintiff's] wound care and his recovery." *Id.* Rae attests that Plaintiff's lab test confirmed the sore was MRSA and Plaintiff was kept in the isolation dorm until January 19, 2011 when the wound was healed. *Id.* at ¶ 6. Plaintiff was returned to the isolation dorm on January 22, 2011 for a new MRSA infection and was again placed on Bactrim. *Id.* Rae saw Plaintiff on January 26, 2011, examined his wound, and instructed Plaintiff on wound care. *Id.* Rae contends Plaintiff remained in the isolation dorm until February 25, 2011, during which time she monitored Plaintiff's wound. *Id.* at ¶ 7. Rae contends that it appeared that Plaintiff's wound should have

healed by February 24, 2011, "but that Plaintiff had been traumatizing the area." *Id.* at ¶ 7. Due to concerns that Plaintiff was preventing his wound form healing, Rae avers that Plaintiff was placed in an isolated cell on February 25, 2011, where Plaintiff remained until March 1, 2011, when Plaintiff was returned to general population. *Id.* Rae attests that Plaintiff did not seek treatment for any additional "skin-related" problems for the remainder of his time at GCDC. *Id.* at 8.

Plaintiff contends that he went to medical on December 20, 2010 to be treated for a suspected case of prostatitis, however, Defendant Rae incorrectly determined that "Plaintiff was suffering from untreated diabetes"[5] and sent Plaintiff to a medical staff member to have blood drawn, during which Plaintiff was struck in the leg by a metal splinter hanging from a swing-arm. ECF No. 52 at 3, 7-8. Plaintiff argues that Defendant Rae was aware of the injury to his leg "immediately after it occurred," but did not treat Plaintiff's injury "until it developed into the potentially life threatening 'MRSA', and did not provide Plaintiff with antibiotics until December 22, 2010," because Rae did not believe Plaintiff was "injured in the manner he described, when and where he described." ECF No. 52 at 11-13. Plaintiff contends that it was not until he could not walk without assistance that Defendant Rae "finally took action to find the source of Plaintiff's infection." *Id.* at 12. Plaintiff contends that the prescription for the antibiotic he was given on December 22, 2010 was "insufficient because the underlying cause (the metallic fragment in Plaintiff's leg) was not addressed." *Id.* Plaintiff argues that Defendant Rae's failure to treat his injury for three days led to a MRSA infection. *Id.* at 14. Plaintiff additionally contends that Defendant Rae denied him medical supplies and materials for dressing changes during his two MRSA outbreaks. ECF No. 52 at 17. Plaintiff also complains that his prostatitis condition was never addressed by medical and that this condition was only treated by

---

[5] Plaintiff argues that additional testing showed that he did not have diabetes. *Id.* at 9-10.

default due to the antibiotics he was taking for the MRSA infection.  ECF No. 52 at 19-20.

Plaintiff contends that the level of care he received while housed at GCDC "fell well below the

standard one would expect of any professional, but especially those who actually wield 'life-and-

death' power in their hands."  ECF No. 51 at 21.

    Plaintiff also complains about the care he received from Defendant Rae for other

conditions and ailments not related to the allegations in Plaintiff's Complaint.  Plaintiff argues

that he was denied his prescribed narcotic medications for lower back pain and Ambien for

insomnia, and instead he was given much weaker, non-narcotic drugs.  ECF No. 51 at 21-22.

Plaintiff also complains that Defendant Rae improperly took away an extra mat that was

prescribed by the GCDC physician to treat Plaintiff's back pain. *Id*. at 24-26.   Plaintiff also

contends that Defendant Rae refused to treat him until December 27, 2011, for a hand injury that

occurred on December 10, 2011.  *Id.* at 27-28.  Plaintiff argues that these other occasions, along

with Rae's treatment of his MRSA infection, establishes that Defendant Rae was deliberately

indifferent to Plaintiff's serious medical needs as Defendant Rae refused to treat Plaintiff

"according to the medical concerns he presented" and refused to continue medical treatment that

was prescribed "by a licensed physician before Plaintiff's incarceration."   *Id.* at 29.   Plaintiff

argues that "material facts in question preclude Defendant's motion for summary judgment."  *Id.*

at 33.

    The undersigned has reviewed the record, including the parties' respective pleadings,

Defendant Rae's affidavit, and Plaintiff's medical records, and finds that Plaintiff has failed to

furnish facts or evidence sufficient to survive summary judgment. Although Plaintiff alleges that

Defendant Rae was aware of his leg injury the day it occurred but refused to examine and/or treat

Plaintiff's injury, the evidence that Plaintiff has offered to support this claim only shows that

Plaintiff was prescribed an antibiotic "one day after [his leg injury] by nursing."  ECF No. 52-1 at 12.   Although Plaintiff contends that Defendant Rae "authorized" the antibiotic thereby proving Rae's awareness of Plaintiff's injury, ECF No. 52 at 11, the medical records provided by the parties do not show that the antibiotics were given on Rae's authorization.  ECF No. 52-1 at 12.  Accordingly, Plaintiff cannot show that Defendant Rae was deliberately and intentionally indifferent to Plaintiff's needs of which she was aware at the time.  To the extent Plaintiff offers other treatment scenarios between Rae and himself to show that Rae was deliberately indifferent to Plaintiff's December 20, 2010 leg injury, the undersigned finds that whether Rae improperly treated Plaintiff on other occasions is insufficient to establish that Defendant Rae exhibited "deliberate indifference" to Plaintiff's "serious medical need" on December 20, 2010. Accordingly, the undersigned recommends granting Defendant Rae's Motion for Summary Judgment.

IV.    Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant Rae's Motion for Summary Judgment, ECF No. 45, be **granted**, and that Plaintiff's Complaint be dismissed.

IT IS SO RECOMMENDED.

December 19, 2013                                        Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**